# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DWAYNE STRINGER,

    *Plaintiff,*

v.

FYRE,
SHIELFIED,
and KING,

    *Defendants*.
_____/

CIVIL ACTION NO. 2:17-cv-10999

DISTRICT JUDGE MATTHEW F. LEITMAN
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 15)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, (Doc. 15), be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1), be **DISMISSED WITHOUT PREJUDICE**.

### II.    REPORT

#### A.    Introduction

Plaintiff Dwayne Stringer is a state prisoner who filed a *pro se* Complaint against Defendants Fyre, Shielfied, and King on March 28, 2017. (Doc. 1). He avers that they "brutal[l]y attacked me unjustly" with "physical force . . . because I did not take off my shoes" when instructed. (Doc. 1 at 3). He seeks damages against all the correctional officers named as defendants. (*Id.*). On June 8, 2017, Defendants filed the instant Motion for

Summary Judgment seeking dismissal without prejudice for Plaintiff's failure to exhaust administrative remedies. (Doc. 15). In response, Plaintiff filed two documents, which I construe as a Response to Defendant's Motion. (Docs. 17-18). In the first document, Plaintiff suggests that he suffers a mental illness, that the warden instructed the grievance coordinator to interfere with his lawsuit, and that she "still refuse[s] to let me get a step 2 grievance on c/o Fyre." (Doc. 17 at 1). Although his statements are somewhat illegible and ambiguous, he seems to say that he has not been getting a response to his Step 1 grievance, despite his repeated requests. (*Id.*). In his second document, he alludes to a video of the alleged beating and an inability to afford to mail his grievances, and he asks the Court to contact the chaplain at Macomb Correctional Facility and request a paper given him that proves Plaintiff is "100% si[ck.]" The time for Defendant to file a Reply has passed. As such, the matter is ready for report and recommendation.

### B.    Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88.

Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a pro se party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### C. Governing Law

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion"

means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies--specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." 549 U.S. at 205; *id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.* at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007).

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.*

### D. MDOC Policy

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130 (eff. 7/9/2007). The MDOC's

grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . ." *Id.* The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete

until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG). *Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### E. Analysis

Defendants posit exhaustion of administrative remedies as their sole defense to Plaintiff's claims. As they note, Plaintiff has not pursued any grievances through Step III of the process. Defendant submits a complete record of grievances that Plaintiff submitted and appealed to Step III of the grievance process. *See generally* (Doc. 15, Ex. 2). It is blank. Plaintiff's Response suggests that he failed to receive responses to his Step I grievance, but this should be no hindrance to filing an appeal. *See* MDOC PD 03.02.130(BB). Poverty likewise cannot excuse the failure to pursue such appeals because, according to federal regulations "[a]n inmate who has neither funds nor sufficient postage and who wishes to mail legal mail . . . or Administrative Remedy forms will be provided the postage stamps for such mailing." 28 C.F.R. § 540.21(d). Neither Plaintiff's Complaint nor his Response alleges he was wrongfully denied such a postage loan. In light of the present record, Plaintiff appears not to have exhausted administrative remedies against Defendant.

### F. Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, (Doc. 15), be **GRANTED**, and that Plaintiff's Complaint, (Doc. 1), be **DISMISSED WITHOUT PREJUDICE**.

### III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2017 S/ Patricia T. Morris
Patricia T. Morris
United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Dwayne Stringer #199442 at Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048.

Date: August 9, 2017 By s/Kristen Castaneda
Case Manager